CITY OF RICHMOND HEIGHTS, a Municipal Corporation, Respondent, v. RICHMOND HEIGHTS MEMORIAL POST BENEVOLENT ASSOCIATION, a Corporation, JOHN MORRISON and A. WADE SCHWATALLA, President and Secretary Respectively of the RICHMOND HEIGHTS MEMORIAL POST BENEVOLENT ASSOCIATION, a Corporation, Appellants. —No. 40817.—213 S. W. (2d) 479.

Division Two, July 12, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, September 13, 1948.

*A. U. Simmons* and *Edwin Rader* for appellants.

72

*Louis A. Robertson* for respondent.

[479] BARRETT, C.—The City of Richmond Heights instituted this proceeding to enjoin and restrain a violation of its zoning ordi-

nance. The defendants [480] are the Richmond Heights Memorial Post Benevolent Association and its officers. The benevolent association is the trust and title holding organization of the Richmond Heights Memorial Post No. 433 of the American Legion (36 U. S. C. A.; Secs. 41-45) whose members automatically become members of the association. The court found that the defendants were using their property at 7303 Lindbergh as a "hall, meeting place, and recreation building" in violation of the ordinance and permanently enjoined its use for any purpose other than those purposes permitted in a " 'B' Single Family Dwelling District." ··

 Upon this appeal by the association we are confronted with the preliminary problem of the respondent's motion to dismiss the appeal because (1) the appellant has failed and refused to make the concise jurisdictional statement required by our rules (Supreme Court Rules 1.08, 1.15) and (2) because we do not have jurisdiction of the appeal, the appellant having failed to properly raise and preserve its objections that the ordinance is unconstitutional. Const. Mo., Art. V, Sec. 3; State ex rel. Volker v. Kirby, 345 Mo. 801, 136 S. W. (2) 319.

The appellants' statement is not preceded by a proper jurisdictional statement. However pages two and three of their statement of facts sets forth that the ordinance is unconstitutional in three respects and the whole of their brief and argument is devoted to the constitutionality of the ordinance. In their amended answer the appellants pleaded that the ordinance was unconstitutional in certain specified respects. Those were in fact the questions litigated and tried and they were all assigned as error in the motion for a new trial, perhaps not as well and accurately as they should have been set forth but sufficiently, as will appear, for the purposes of this appeal. Furthermore this cause was transferred here by the St. Louis Court of Appeals (Const. Mo., Art. V, Sec. 10) upon the specified ground "that this controversy involves constitutional questions." In view of this circumstance the reason for enforcing the rule requiring a jurisdictional statement looses its force and, if in point of fact a constitutional question is involved in the controversy, there can be no doubt as to our jurisdiction.

 The city's comprehensive zoning ordinance became effective on May 5th, 1941, replacing a previous ordinance adopted in 1922. The appellants admit the power and authority of Richmond Heights to enact the ordinace (Mo. R. S. A., Secs. 7412-7423) in the exercise of its police power. Ryan v. City of Warrensburg, 342 Mo. 761, 117 S. W. (2) 303. They concede the city's right and power to create residential districts excluding all businesses and multiple dwellings from the single family districts. Annotations 86 A. L. R. 659; 117 A. L. R. 1117. In fact it is conceded that the comprehensive ordinance is valid and constitutional in its general aspects. State ex rel. Oliver

Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S. W. 720. Certain rules and general principles concerning zoning are not in dispute. Admittedly, it is primarily the duty of the city in enacting a zoning ordinance to say in what district a particular area of the city should be placed and if the classification is reasonably doubtful the judgment of the court may not be substituted for the judgment of the city as to the propriety and reasonableness of the classification. Taylor v. Schlemmer, 353 Mo., l. c. 697, 183 S. W. (2), l. c. 917; Mueller v. Hoffmeister Undertaking & Livery Co., 343 Mo. 430, 121 S. W. (2) 775. Whether the classification and enforcement of the ordinance is reasonable and constitutional or whether it is arbitrary and unreasonable and therefore unconstitutional depends upon a careful examination of the evidence and the facts and circumstances of each case. Smith, Zoning Law & Practice, Sec. 56; 3 McQuillin, Municipal Corporations, Sec. 1043. In any event the regulation and restriction into districts must be reasonable, uniform or universal and nondiscriminatory, the restrictions having a fair tendency to accomplish or aid in the accomplishment of some purpose for which the city may exercise its power. 3 McQuillin, Municipal Corporations, Secs. 1027, 1043. It is the appellants' contention under the facts and circumstances, particularly as applied to their property and its use, that [481] the classification and enforcement of the ordinance is arbitrary and unreasonable, violative of due process (Const. U. S. Amend. 14; Const. Mo., Art. I, Sec. 10) and of their right to peaceably assemble (Const. U. S. Amend. I; Const. Mo., Art. I, Sec. 9) and therefore unconstitutional. Glencoe Lime & Cement Co. v. St. Louis, 341 Mo. 689, 108 S. W. (2) 143; Village of Euclid v. Ambler Realty Co.. 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303; Women's Kansas City St. Andrew Soc. v. Kansas City, 58 F. (2) 593; Village of University Heights v. Cleveland Jewish Orphans' Home, 20 F. (2) 743; 86 A. L. R., l. c. 664.

The American Legion, through its benevolent association, purchased the property known as 7303 Lindbergh after the enactment of the ordinance. The contract of purchase was executed in 1945 and the warranty deed was delivered in 1946. The legion post applied to the Plan and Zoning Commission and to the City Council for permission to occupy the premises "as a Legion Home and Community Building." Petitions both for and against the occupancy were submitted by residents of the neighborhood. Some residents, possibly six, signed both petitions. The legion claimed that of the twenty-seven property owners affected fourteen favored the occupancy and but three were opposed to it. On the other hand proponents of the ordinance claimed that there were more residents opposed to the occupancy than there were in favor of it. In any event, after notice and public hearings, the Plan and Zoning Commission recommended that the City Council deny the legion permission to occupy the premises. The Council denied permission but the legion nevertheless continued

to occupy and use the premises and the city brought this action to enforce compliance with its ordinance.

The property known as 7303 Lindbergh is on the southwest corner of Dale and Lindbergh, Dale being one of the principal streets of Richmond Heights. The triangular block, circumscribed by Dale, Lindbergh and Silverton is zoned as a " 'B' single family residence district." There is no nonconforming building in the block, other than an excepted church at the south end of the block, and except for some roomers, some of whom probably lived there before the enactment of the ordinance, there is no nonconforming use of any property in the block. Likewise the block to the west is a single family district in which there are no nonconforming buildings or uses. The appellants' building is a two-story brick residence which also conforms in every respect to the ordinance. The block to the north, circumscribed by Dale, Big Bend Road, Harter and Highland Terrace is also zoned as a " 'B' single family residence district." The City Hall, however, is on the northwest corner of Dale and Big Bend and the three lots on the corner of Dale and Highland, directly across the street from 7303 Lindbergh, is a pre-existing, nonconforming commercial property. Practically all the property in the five blocks north and south of the block in question are single family districts except for a few previously existing "two family residences." The tracks of the St. Louis Public Service Company are on Lindbergh and end in a loop on the company's right-of-way across Dale. The property north and east across Dale, along Hawthorne Place, is four family and commercial property. There are some stores and a tavern on Dale and Hawthorne. Directly east across Lindbergh from 7303 there is a vacant lot and two or three pre-existing commercial lots. The appellants point to these latter facts, particularly the proximity of the previously existing nonconforming uses and the evidence respecting their use of their property and urge, in all the circumstances, that as to them and their property the ordinance is unreasonable and arbitrary.

The legion post has a membership of 348. The post has been meeting at 7303 Lindbergh twice a month, with an attendance of from fifteen to thirty-three. They usually have a business meeting and then serve refreshments which the members or a committee bring in, including beer. Some legion committee meetings are held there and the lumber and paraphrenalia for the legion's annual carnival is stacked in the back yard and in the garage. In all these circumstances it is argued that the property [482] is used only as "a meeting place" and that it is unreasonable to exclude them.

Admittedly the building and property as they now exist conform to the ordinance and this fact is emphasized by the appellants. However, in a letter to the City Council dated October 29, 1945 the legion committee said: "Although this selection is not quite as pretentious

as we had hoped for, yet with minor changes in the building, it should be a conservative and dignified Legion Post Home and Community Service Building, at least for the immediate future. Later, if and when changed conditions warrant, we may be in a position to erect a larger and more suitable structure along Dale avenue; and then rent or lease the residence on Lindbergh.'' But the trial court put its decision on the use being made of the premises and so we do not consider the fact of the property's physical conformance either for or against the appellants or the respondent.

It is argued in effect that the evidence does not demonstrate a nonconforming use. But in addition to the admitted use an expert, from Harland Bartholomew and Associates who made the initial survey and plan for the districts and the ordinance, testified that this area of the city was essentially residential and classified the appellants' use of the property as that of a club, a nonconforming use permitted only in multiple family districts. It is not even debatable, but that the appellants' use of the property is a nonconforming use and violative of the ordinance. In this respect it is fairly comparable to a college fraternity house or a lodge. Pettis v. Alpha Alpha Chapter of Phi Beta Pi, 115 Neb. 525, 213 N. W. 835; City of Lincoln v. Logan-Jones, 120 Neb. 827, 235 N. W. 583; State ex rel. Morehouse v. Hunt, 235 Wis. 358, 291 N. W. 745; In re Jennings' Estate, 330 Pa. 154, 198 Atl. 621; Town of Huntington v. Welfare Honor Relief Fund, 14 N. Y. S. (2) 272. Nevertheless the appellants contend, because of the nature of the surrounding property and its uses, that the restriction is unreasonable and arbitrary.

In support of their contention the appellants' chief reliance is on the leading and well-considered case of Women's Kansas City St. Andrew Soc. v. Kansas City, 58 F. (2) 593. In that case it was held unreasonable and arbitrary to exclude ''a philanthropic 'old ladies home' '' from a single family district. There the physical property conformed to the ordinance and there was no intention to change or enlarge the property. It was held that there was no evidence of any conceivable relationship between the exclusion of the proposed home and any purpose permitted under the police power. The facts and circumstances were carefully analyzed and it was held that as to the use of the property involved the ordinance was unconstitutional. It must be admitted that the case is of some force here. However it is distinguishable on its facts. The evidence showed that there would never be more than twelve ladies in the home at one time. Furthermore the property was to be used as *a residence*. Contrasted with the legion's use of its property, the use by the twelve elderly ladies maintained the character of the use contemplated by the ordinance.

In the instant case there was a conflict in the evidence as to whether a legion home would lower the value of other property in the district.

But, in addition to other purposes, one authorized object of a zoning ordinance is "with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, *and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout such municipality.*" Mo. R. S. A., Sec. 7414.

This is a borderline case. But considering the character and purpose of the American Legion (Chapman v. American Legion, (Ala.) 14 So. (2) 225) it can only be said that the classification of use is doubtful and the court's judgment may not be substituted for the judgment of the city. Taylor v. Schlemmer, supra. "The fact that the ordinance establishes here and there small commercial districts where stores may be maintained within comparatively short distances from the residence districts does not make it irrational or discriminatory." State ex rel. Oliver Cadillac Corp. v. Christopher, 317 Mo., l. c. 1195, 298 S. W., l. c. [483] 726. The right to use one's property and the right to peaceably assemble are subject to the legitimate exercise of the police power by the state (16 C. J. S., Sec. 214, p. 641) and the facts and circumstances of this case do not demonstrate that the power was so arbitrarily or unreasonably used as to violate due process. Taylor v. Schlemmer, supra; Ryan v. City of Warrensburg, supra; 3 McQuillin, Municipal Corporations, Sec. 1043.

Accordingly the judgment is affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. *Leedy* and *Ellison, JJ.*, concur; *Tipton, P.J.*, not sitting.