STATE of Missouri ex rel. W. C.
COOPER et al., Respondents,

v.

Ray G. COWAN et al., Appellants.

No. 22678.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1957.

James L. Williams, Kansas City, Jack G. Beamer, Stubbs, McKenzie, Williams & Merrick, Kansas City, for appellant.

James P. Aylward, George V. Aylward, James P. Aylward, Jr., Kansas City, for respondent.

HUNTER, Judge.

This is an appeal from the decree of the Circuit Court of Jackson County, Division No. 12, reversing an order of the County Court of Jackson County rezoning a tract of land in the unincorporated portion of Jackson County from District "A" (residential) to District "E" (business).

Intervenor-Appellant, Wilford E. Chambers, owned a tract of land of approximately five acres, lying along both the east and west sides of Blue Ridge Boulevard at approximately 104th Street in Jackson County. Under date of October 13, 1955, Chambers filed an application with the Jackson County Planning Commission requesting the rezoning of the tract "from District A to District E for the proposed use as a service station". There was an accompanying plat of the tract and of the immediately adjacent area, together with a list of names of property owners in its vicinity reportedly notified of the application. Other notice was given, and the hearing was set for February 14, 1956. As a result of that hearing, at which Chambers and his attorney appeared and testified in favor of the rezoning, and numerous interested property owners appeared and testified against it,

the Jackson County Planning Commission recommended denial of the application. On March 14, 1956, again on notice to interested parties a hearing on the application was held by the Jackson County Court. Since the disposition of this case, as we view it, turns upon the testimony and evidence presented at the hearing before the county court, we proceed to set it out in substance.

■ James McMullin, attorney for Chambers, made a statement on behalf of his client in which he undertook to locate and describe the tract proposed to be rezoned, and to describe the floor plan and structure of the contemplated filling station, its storage area and tanks. He also undertook to answer certain questions asked by some of the opponents. Since he was not sworn as a witness we do not treat his remarks as testimony or evidence. State ex rel. Horn v. Randall, Mo.App., 275 S.W.2d 758; Hardwick v. Kansas City Gas Co., 352 Mo. 986, 180 S.W.2d 670; State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 220 S.W.2d 61.

The only witness appearing for proponent Chambers was proponent. The substance of his testimony is as follows: He is the fee simple owner of the tract, and is asking that it be changed from "A" to 'E". It is considered as unimproved land, but it does have a house located on the north side of that portion of the tract on the east side of Blue Ridge Boulevard. He intends to construct a 10-pump filling station on that portion of the tract lying east of Blue Ridge Boulevard, and it is to be constructed according to the plans introduced in evidence. It would have a concrete entranceway and the building would be made of mason block. In the building there would be a sales room, storage room and two rest rooms. The storage tanks would be underground. Empty cans and such would be put in an open square pit, and as in a residential area "There is a man who comes by once a week to pick it (such trash) up." He doesn't know if the station will be a "cut-rate station" or not. As to whether it would remain open all night,

that depended on whether or not enough business developed to justify it. As to a mentioned water shortage in the area, he would not expect during any such event to be permitted to wash cars, but would use water for drinking and to flush stools. He currently has a tenant on the premises but so far as he knows, no business is being presently operated there.

Four pictures of the five-acre tract were introduced in evidence. While they give a clear view of the unimproved portion of the tract, they show relatively little of the surrounding area. Also offered in evidence was proponent's certificate of survey of the tract showing that the frontage on each side of Blue Ridge Boulevard was approximately 534 feet, and that well over 75% of the tract lay on the east side of that boulevard. Proponent's counsel informed the county court they did not plan any use of or business for the smaller portion of the tract lying on the west side of the boulevard; "All we care about is the filling station." The master zoning ordinance enacted in 1943 was put in evidence.

Twenty-eight residents of the immediate area appeared and testified in opposition to the request for the zoning change. The substance of their combined testimony is as follows: The requested rezoning and building of the proposed filling station will cause a substantial depreciation in value of the numerous family residences in the area, and lessen their desirability as homes. It would depreciate the property, particularly for F.H.A. loans, and prevent the future obtaining of those loans. It would create a fire hazard. It would create a traffic hazard and increase the present traffic danger, particularly to the substantial number of small children in the locality who board the school bus near it. The fumes, fire hazard, traffic hazard and other safety hazards that would result are not conducive to the safety, health or welfare of the many children in the vicinity. It would be unsightly, and result in an unnecessary eyesore in an otherwise residential area that includes homes, some of which are valued at $20,-000 or more. It is the only vacant tract on Blue Ridge. The nearest crossroads are so far away from this five-acre tract that rezoning of the tract for business would be the same "as having it in the middle of a block between homes". The area cannot support any new business. There are already no less than fifteen or sixteen filling stations within a mile radius of this tract in question. The filling station proposed would not occupy all of the tract but would leave a small portion of it open to be occupied by some other possibly undesirable business to this essentially residential area of nice homes.

On September 5, 1956, the county court entered its formal order granting the application for rezoning as to a major portion of the five-acre tract and attached certain "conditions" thereto.

On application, a writ of certiorari was issued in the cause, and Wilford E. Chambers was permitted to intervene. The circuit court, without hearing any further evidence, tried this cause. On February 28, 1957, the circuit court entered its order and decree in favor of respondents (opponents) together with its finding that the county court order was made in excess of its statutory authority; was not supported by competent and substantial evidence upon the whole record; was unauthorized by law; was arbitrary and capricious, involved an abuse of discretion and constituted spot zoning. Thereafter, timely appeal was taken to this court.

■■ We commence with consideration of appellant's contention that the circuit court erred in holding that the zoning amendment order was not supported by competent and substantial evidence upon the whole record. In so doing, we acknowledge that judicial review of a zoning order of the county court is a limited one, and that certain well-defined rules govern. State ex rel. Christopher v. Matthews, 362 Mo. 242, 240 S.W.2d 934; Colt v. Bernard, Mo.App., 279 S.W.2d 527; Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647.

Jackson County is a first class county. The statutory law authorizing its zoning orders, their amendment, and their review is to be found in Sections 64.010 to 64.160 inclusive, RSMo 1949, V.A.M.S. Section 64.120(3) provides in essence that any person aggrieved by any decision of the county court may by petition seek and obtain from the appropriate circuit court a writ of certiorari directed to the county court for review of the data and records acted upon by it. See also Section 536.100 RSMo 1949, V.A.M.S. Thereupon the circuit court, sitting without a jury, is to hear the cause, and .upon proper presentation of the question is to determine, among other things there enumerated, whether or not the action of the county court "is unsupported by competent and substantial evidence upon the whole record". Section 536.140 RSMo 1949, V.A.M.S. This is in accordance with our state constitution which provides in part that the review of all final decisions, findings, rules and orders of any administrative officer or body, which are judicial or quasi-judicial and affect private rights, shall include the determination of whether the same are authorized by law, and in cases in which a hearing is required by law, whether they are supported by competent and substantial evidence upon the whole record. Section 22, Art. 5, Const.1945, V.A.M.S.; State ex rel. Swofford v. Randall, Mo.App., 236 S.W.2d 354; Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626; Veal v. Leimkuehler, Mo.App., 249 S.W.2d 491, certiorari denied 344 U.S. 913, 73 S.Ct. 336, 97 L.Ed. 704.

■ As stated by our supreme court, en banc, in Kansas City v. Rooney, supra, 254 S.W.2d loc. cit. 628: "This 'does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence.'"

■ According to the evidence, in 1943 in accordance with a single comprehensive zoning plan Jackson County's Master Zoning Order was adopted. See Section 64.040 RSMo 1949, V.A.M.S. As required by statute, the premise of its basis of regulation must be "promoting health, safety, morals, comfort of the general welfare of the unincorporated portion of the counties, to conserve and protect property and building values, to secure the most economical use of the land and to facilitate the adequate provision of public improvements all in accordance with a comprehensive plan". Section 64.090 RSMo 1949, V.A.M.S. For as stated in Flora Realty & Investment Co. v. City of Ladue, 326 Mo. 1025, 246 S.W.2d 771, 778: The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare." The restriction must have a fair tendency to accomplish or aid in the accomplishment of some purpose for which the enacting authority may exercise its power. City of Richmond Heights v. Richmond Heights Memorial Post Benevolent Ass'n, 358 Mo. 70, 213 S.W.2d 479; Welch v. Swasey, 214 U.S. 91, 29 S.Ct. 567, 53 L.Ed. 923.

■ The master zoning ordinance placed the tract in question in a residential classification. It is presumed to have done so in furtherance of one or more of the above stated statutory objectives, broadly considered as being in furtherance of the public health, safety, morals or general welfare. Flora Realty & Investment Co. v. City of Ladue, supra. The amending order departs from this comprehensive plan and sets aside this small tract, located in a residential area, for business purposes upon which it is proposed to construct a filling station.

It is stated in Allega v. Associated Theatres, Inc., Mo.App., 295 S.W.2d 849, loc. cit. 857, " 'The decisions enumerated

(there) agree that the exclusion of buildings devoted to business, trade, etc., from residential districts, bears a rational relation to the health and safety of the community. Some of the grounds for this conclusion are promotion of the health and security from injury of children and others by separating dwelling houses from territory devoted to trade and industry; suppression and prevention of disorder; facilitating the extinguishment of fires, and the enforcement of street traffic regulations and other general welfare ordinances; * * *'. If such purposes are valid reasons for sustaining an ordinance which seeks to exclude or prevent those conditions from arising in a classified area, it would seem to follow that an ordinance which brought about the reverse or a contrary condition would be invalid. Apparently our statutes so contemplate." Each case, of course, must be determined upon its own particular facts.

■■■ The enacting authority should exercise the same careful, serious and intelligent consideration of an amendment to a zoning order as is exercised in the preparation and enactment of the original or master zoning order. Schell v. Kansas City, Missouri, 360 Mo. 27, 226 S.W.2d 718; Wippler v. Hohn, 341 Mo. 780, 110 S.W.2d 409, 411. To satisfy our state constitutional and statutory requirements, the record on which the administrative agency, here the county court, acts must contain competent and substantial evidence in support of the amending ordinance. This is so even though enactments of zoning orders are given the aid of a presumption of validity, and even though the burden of proving their invalidity rests upon those challenging that validity. Allega v. Associated Theatres, Inc., supra; State ex rel. Horn v. Randall, supra; Carroll Construction Co. v. Kansas City, Mo.App., 278 S.W.2d 817; Veal v. Leimkuehler, supra; Kansas City v. Rooney, supra.

In the instant case there is nothing in the record that could be said to be competent and substantial evidence supporting the amending order. On the contrary, all of the evidence that appears pertinent to a determination of the issue of whether or not the amending order was in furtherance of the public health, safety, morals or general welfare, or of the more specific enumeration of them as contained in the appropriate statute (Section 64.040) came from the opponents and tended to show that the proposed rezoning was detrimental to those considerations. As we have indicated, the unsworn statements of proponent's counsel are not evidence and cannot be the basis of the competent and substantial evidence required by the constitution in support of a zoning order. Counsel, or anyone else desiring to be a witness and to testify, should be sworn. As to proponent's testimony, it fails to show or to fairly tend to show that the proposed zoning change was in furtherance of the public health, safety, morals or general welfare, or of the more specific statutory enumeration of them set out in Section 64.040 RSMo 1949, V.A.M.S. In so holding we do not intend to indicate that changed conditions in particular circumstances will not justify or support a departure from a master zoning order. Nor do we intend to suggest generally that business districts located within particular residential areas are not desirable and may not be in furtherance of public health, safety, morals and general welfare. All we hold is that upon the record made in this case before the county court, which we must review to determine if it contains competent and substantial evidence in support of the county court's order, the record fails to contain that required evidence. In view of what we have said it is unnecessary to consider the numerous other contentions of the parties.

The judgment of the trial court, which also found the record devoid of any competent and substantial evidence to support the county court zoning order, is in all respects, affirmed.

All concur.