(No. 38074.—

JACK E. FROST *et al.*, Appellees, *vs.* THE VILLAGE OF GLEN ELLYN, Appellant.

*Opinion filed January 22, 1964.*

J. EDGAR KELLY, of Chicago, for appellant.

SCHMID and ORSTROM, of Glen Ellyn, (PAUL S. SCHMID, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, the village of Glen Ellyn, here appeals from a declaratory judgment of the circuit court of Du Page County finding defendant's zoning ordinance to be invalid insofar as it prohibits plaintiffs, Jack E. Frost and Kathryn M. Frost, from operating a drive-in restaurant on a property they own. The trial judge has certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court. Ill. Rev. Stat. 1963, chap. 110, par. 75(1).

Plaintiffs' land, consisting of two adjoining lots, is located at the northeast corner of Main and Elm streets, the combined lots having a frontage of 125 feet on Main and a depth of 135 feet along Elm. The lot immediately adjacent to the intersection is vacant and was purchased by plaintiffs around 1950 for $2,500; the second lot, adjoining on the north, was purchased in 1948 for $15,000 and presently has a small, vacant one-story building on it. The plaintiffs operated a grocery and meat market in the building from 1948 until December, 1961, quitting business on the latter date because they could not meet the competition of a supermarket erected across the street. The store has remained vacant since that time and efforts to sell at a listed price of $42,500 having been unsuccessful, plaintiffs started negotiations for a franchise with a drive-in restau-

rant chain. If successful, and zoning permitting, plaintiffs propose to tear down the old structure on the premises and to erect at an approximate cost of $25,000 a new building for a restaurant operation selling sandwiches, nonalcoholic beverages and light basket lunches. They would provide both inside service, seating approximately twenty people, and outside service to persons who would park their cars on the premises, under a canopy.

When plaintiffs purchased their property it was zoned for "Local Business," a classification which permitted almost any business use. On February 27, 1961, defendant adopted the zoning ordinance in question here. By its terms, all of the property fronting on Main Street in the block where plaintiffs' land is located was classified as a "B-2 Community Business District," in which more than sixty-two specific businesses are permitted, including "restaurants where no entertainment or dancing is provided." Other uses include almost every conceivable business normally found in the downtown area of a community, and under the circumstance that businesses allowed in the "B-1 Local Business District" classification are permitted in the B-2 District, such uses as retail grocery stores, meat markets, bakeries, delicatessens, candy and ice cream stores are permissible. A drive-in restaurant, to the contrary, is allowed only in a "B-3 Service Business District," and then only on the basis of a special use permit provided for in another section of the ordinance. Generally speaking, the B-3 classification includes such things as garages, gas stations, parking lots, theaters, plumbing shops, machinery and equipment sales and the like. The only other "food" uses relegated to the B-3 district are: Restaurants where there is live entertainment and dancing; retail meat markets which also sell to hotels, clubs or similar establishments; catering establishments; and frozen food shops. None are subject to the special use permit provisions of the ordinance.

Main Street is a north-south street, while Elm Street

runs east and west at a point one block south of the northern corporate limit. Geneva Road and St. Charles Road converge on the west line of Main Street, one block north of Elm, and St. Charles continues east from Main. The north corporate limit of the village thus runs along Geneva Road west of Main Street and along St. Charles Road east of Main Street. Zoning of land to the north of Geneva and St. Charles roads is controlled by the zoning ordinance of Du Page County and, in such regard, properties on the county side of the Main-Geneva-St. Charles intersection are zoned as a B-4 Business Service District.

Adjoining the plaintiffs' parcel on the north is a laundromat, and the remainder of the block on the east side of Main Street is occupied by a gas station. Opposite plaintiffs' property, on the northwest corner of Main and Elm, there is a supermarket with parking facilities for 40 to 50 cars. The next property north is occupied by a building housing a real-estate office, beauty parlor and a radio-TV store. Next in order is a drive-in dry cleaning establishment and, at the southwest corner of Main and Geneva, a restaurant with an apartment on the second floor.

North of the corporate limits, on the east side of Main, is a gas station, an automobile body shop and storage yard and a store building occupied by a heating and sheet metal business. On the west side of Main, north of the corporate limits, is a combination liquor store and tavern, and an excavating contractor's garage and equipment storage area. Beyond is a single-family residential district extending approximately one quarter of a mile to a railroad right of way. On each side of the railroad are narrow industrial zones.

South of Elm Street, on the east side of Main and directly accross from plaintiffs' land, is a parcel of land owned by an elementary school district. The westerly, or front portion of this parcel is a baseball diamond and in its southeast corner is a three-car garage used for housing equipment of the school district. Across Main, on the southwest

corner, is a six-year elementary school, its building and playground occupying the north half of the block west of Main and south of Elm. All of the area immediately east, south and west of what has been described within the village limits is zoned for, and occupied by, single-family residences ranging in value from $15,000 to $60,000. Immediately to the east, along Elm, plaintiffs' land adjoins a residence property valued at about $15,000, and construction plans for the drive-in restaurant call for the erection of a solid, serpentine-type wall along the eastern boundary of plaintiffs' premises.

From our examination of the ordinance, the testimony, maps and photographs in evidence, we are in accord with the finding of the trial court that defendant's ordinance is arbitrary and capricious insofar as it prevents a drive-in restaurant in a B-2 business district. Zoning regulations must have a real and substantial relation to the public health, safety, welfare or morals, (*Bolger* v. *Village of Mount Prospect,* 10 Ill.2d 596,) and, as was observed in *City of Richmond Heights* v. *Richmond Heights Memorial Post Benevolent Ass'n,* 358 Mo. 70, 213 S.W.2d 479, at 480: "* * * the regulation and restriction into districts must be reasonable, uniform or universal and nondiscriminatory, the restrictions having a fair tendency to accomplish or aid in the accomplishment of some purpose for which the city may exercise its power." In the present case we see nothing essential to the protection or preservation of the public health, safety, welfare or morals, which justifies or requires the singling out of the drive-in restaurant business and according to it a different treatment than the many other uses permitted under the B-2 classification. Stated differently, we see nothing inherently different in the character of the business plaintiffs seek to establish on their property, so far as it effects the public interest, from the many other business uses that could be put there as a matter of right under the B-2 business classification. Statutory

classifications, even those effected by zoning ordinances, can be sustained only where there are real differences between the classes and where the selection of a particular class, as distinguished from others, is reasonably related to the evils to be remedied by the statute or ordinance. *City of Chicago* v. *Sachs*, 1 Ill.2d 342; *Ronda Realty Corp.* v. *Lawton*, 414 Ill. 313.

We fail to see how a drive-in restaurant of the nature here planned is significantly more detrimental to the public health, safety, welfare or morals than a restaurant fully enclosed within four walls, or than a bakery, a candy or ice cream store, a grocery store, a meat market, a delicatessen, or a retail liquor store and many more of the sixty-two businesses permitted in B-2 districts. And this is particularly true in view of the existing uses along Main Street which characterize and predominate the district. Traffic attracted would be no greater than that attending many of the other uses permissible, and a drive-in restaurant would, in our opinion, have no greater a depreciatory effect upon nearby residence properties, already exposed to the effects of existing businesses, than would a liquor store, a candy shop, an ice cream store, a laundromat, a club or a lodge. We conclude, therefor, that defendant's ordinance is arbitrary, unreasonable and capricious insofar as it operates to exclude drive-in restaurants from B-2 districts, and insofar as it subjects such use to the special use technique. Whether the special use provisions are in themselves subject to constitutional infirmity is unnecessary for us to decide.

For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

*Judgment affirmed.*