**Joseph H. VATTEROTT, Respondent,**

v.

**CITY OF FLORISSANT et al., Appellants.**

No. 55033.

Supreme Court of Missouri,
Division No. 1.

Jan. 11, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 8, 1971.

Robert P. Baine, Jr., Busch, Ossenfort & Baine, Clayton, for respondent.

Carroll J. Donohue, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for appellants.

HIGGINS, Commissioner.

Appeal from judgment that Ordinance 1625, the "zoning ordinance" of the City of Florissant, is confiscatory and void as applied to a certain tract owned by plaintiff-respondent. The action involves constitutionality of the ordinance in question, Marshall v. Kansas City, Mo., 355 S.W.2d 877, 879[1]; and evidence shows that some $95,000 is also in controversy. Wrigley

Properties, Inc. v. City of Ladue, Mo., 369 S.W.2d 397, 398[1]; Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833, 834.

The property involved is the south 240 feet of Parcel B of Duchesne Hills, Plat 2, a subdivision in the City of Florissant. Duchesne Hills No. 2 was a tract of farm land when acquired by plaintiff June 15, 1954. A plat was recorded February 25, 1955, and its accompanying "Protective Covenants" recite that "All lots (198 in number) shall be known and described as single-family residential lots except Parcel A and Parcel B and Lots 102, 103, 104, 105, 106, 107, 108, and 109. Parcel A may be used for business or playground purposes and Parcel B may be used for commercial purposes. Lots 102 to 109 inclusive may be used for either single-family residences or as the site for two-family brick duplex residences." The covenants also covered matters such as height of buildings, approval of proposed construction by an Architectural Control Committee, minimum costs, set-back lines, and provisions controlling signs, animals, trash and sewage. Prior to recording, the plat and covenants were "approved" by the City of Florissant "Plan and Zoning Commission" February 3, 1955, and by the Florissant City Council February 14, 1955.

The plat shows Parcel A as a tract having approximately 360 feet on the north side of St. Anthony Lane and 515 feet on the east side of Washington Street. Parcel B is shown as having approximately 360 feet on the south side of St. Anthony and 570 feet on the east side of Washington. The interior lines of both tracts are adjacent to residential lots.

In 1957 plaintiff sold a portion of Parcel B, 125 feet x 125 feet at the corner of St. Anthony and Washington, to the Tidewater Oil Company for $55,000, or $3.52 per square foot, for a gasoline service station.

In 1959 plaintiff sold another portion of the north part of Parcel B, 110 feet on St. Anthony by 125 feet in depth, adjoining the service station, for $12,500 or $0.90 per square foot, for a "Quick Shop" grocery. In February, 1965, an L-shaped portion in the north part of Parcel B with frontage on both St. Anthony and Washington, surrounding the other two portions, was sold to Kroger Company for $142,864.50, or $1.00 per square foot, for a supermarket and a parking area. The south 240 feet of Parcel B fronts on Washington, and is approximately 364 feet along its north line, 305 feet along its east line, and 439 feet on its south boundary. It is generally flat, with an approximately three per cent slope, and contains some 96,000 square feet, or 2.2 acres. It abuts residential development on its south toward St. Edwards Lane, on its east toward St. Eugene Lane, and on its west across Washington. To the north are the service station, Quick Shop, and Kroger store.

On February 9, 1959, Florissant enacted Ordinance 903 "reaffirming, amending, and revising Ordinance 142,[1] the zoning ordinance, and all ordinances in amendment thereto and the map accompanying Ordinance 142." A district map under Ordinance 903 showed all of Parcel B as District E, Commercial.

In November, 1965, Florissant enacted Ordinance 1625, "Zoning Ordinance of the City of Florissant," "reaffirming, amending and revising Ordinance No. 142 as amended, and particularly as amended by Ordinance No. 903, * * * and all ordinances in amendment thereto and the map accompanying said Ordinance." The district map under Ordinance 1625 placed the property in question, i. e., the south 240 feet of Parcel B, in R–4, Single Family, 7,500 square feet, and recognized the commercial character of the previously developed remainder of Parcel B to the north.

I. No enactment date is shown for Ordinance 142, nor is it clear what zoning provision was made with respect to Parcel B.

In June, 1967, plaintiff listed the property in question with the Bank of St. Louis and, on June 14, the bank advised plaintiff by letter that "they had checked the zoning prior to putting up a 'for sale' sign and at that time they learned that the property was no longer zoned commercial but had been changed to residential * * * . At that time we elected to file an application for change of zoning" to B–3, Extensive Commercial.

On November 20, 1967, the Florissant Planning and Zoning Commission approved the requested rezoning; but, upon referral, the city council in January, 1968, denied the application for rezoning and this denial gave rise to plaintiff's petition for declaratory judgment, filed April 9, 1968, the principal allegations of which were that the value of the property if available for commercial use "is greatly in excess of its value for residential use"; that Ordinance 1625 is "unconstitutional, illegal, and invalid in that it is arbitrary, discriminatory and unreasonable in restricting" plaintiff's property to residential use. Plaintiff's prayer was that Ordinance 1625 be declared "unreasonable, unconstitutional, unlawful and void with respect to the application and enforcement of the same against the land," and that defendants be "enjoined and forever prohibited from preventing plaintiff's use of said land for business or commercial uses commensurate with such uses now permitted in the surrounding area." The court's principal findings were that residential development of the property would be "impossible due to the lack of necessary frontage along Washington Street by nearly 10 feet"; that there was no showing that the development as commercial "would have a harmful effect or be inimical in any way to the surrounding property owners or to the general public health, safety, morals or general welfare * * * . Evidence, however, does show * * * a $95,000 difference in the value of the tract if the R–4 zoning is permitted to stand." Accordingly, the court entered the judgment previously described, granting the relief prayed by plaintiff, and this appeal followed.

Appellant's position is that the trial court erred because a zoning classification is a legislative function not to be set aside unless shown to be so arbitrary and unreasonable as to render its application not fairly debatable, and that plaintiff did not present the proof necessary to substitution of judicial judgment for that of the legislative body.

The rules governing resolution of the issue thus presented are well known but can bear yet another recital. Whether the classification and enforcement of a zoning ordinance is reasonable and constitutional or whether it is arbitrary and unreasonable and therefore unconstitutional in its application to a specific property depends upon the evidence and the facts and circumstances of each case. City of Richmond Heights v. Richmond Heights Memorial Post Benev. Ass'n, 358 Mo. 70, 213 S.W.2d 479, 480[3]. As collected in Desloge v. County of St. Louis, Mo., 431 S.W.2d 126, 131–132[3–6]: The legislative body has the duty to determine the use classification for any particular area. Unless it appears that the determination by that body is arbitrary and unreasonable, the court cannot substitute an opinion for the council's determination. If the council's action is fairly debatable, the court cannot substitute its opinion. The legislative body's enactment is clothed with a presumption of validity, and he who would challenge the reasonableness of the ordinance as applied to specific property has the burden of proving unreasonableness. See also Landau v. Levin, 358 Mo. 77, 213 S.W.2d 483; Flora Realty & Inv. Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771, 778; Downing v. City of Joplin, Mo., 312 S.W.2d 81. These concepts apply equally to rezoning and refusal to rezone. Wrigley Properties, Inc. v. City of Ladue, supra, 369 S.W.2d 1. c. 400[3].

In addition to the matters previously stated, plaintiff presented testimony of Charles J. Sweeney, Jr., Secretary of Jo-

seph H. Vatterott Building Company, and Enno Kraehe, a real estate consultant and appraiser; and defendants called Samuel I. Dardick, an "urban planner" from the offices of Dardick, Grossman, Heath and Associates.

Mr Sweeney's opinion was that development of the property as a residential tract was impractical. The maximum number of lots he could accomplish was "eight or nine" under present zoning.

Mr Kraehe's opinion was that value of the property zoned R–4 was $24,000 and would be $119,000 if zoned B–3.

Mr. Dardick studied the zoning of the tract in question for the City. In his opinion residential zoning was reasonable and appropriate. He supported his opinion with a panorama showing the nature of the property surrounding the tract and its residential character. He found Florissant to be a community of residential neighborhoods supported by service facilities of public and "service-commercial nature"— schools, and recreation, and commercial facilities. By layout, Mr. Dardick presented one concept of residential development suitable to the tract, "a Residential Design Development Procedure" which would produce 11 units as attached single family residences together with off-street parking and "landscaping and recreation area." He felt the site could be developed residentially in other forms also but made no calculation of the number of typical 7,500 square foot lots that could be produced on the site. He felt the tract had a value of $66,000 for residential development. He also analyzed existing commercial facilities in the area in terms of general standards for neighborhood shopping facilities of 25,000 square feet of commercial floor area to serve 5,000 persons within a half-mile radius. Within such radius he found three shopping areas containing over 50,000 square feet of commercial and retail floor. Within a mile radius were two more substantial commercial areas and a part of Florissant's business district. One facility is a community shopping center containing

a variety store, junior shopping market, and specialty shops. Based on such findings, it was his opinion there was no further need for community or neighborhood commercial facilities at the site in question and that further residential development was proper.

This evidence, considered in terms of the cited law, demonstrates that plaintiff failed to carry his burden of proving that the zoning ordinance is unreasonable in its application to the property in question; and, as a consequence, it was error for the court to substitute its judgment for the determination made by the city council. Plaintiff's own witness, Mr. Sweeney, in making his layout of "eight or nine" residential lots, acknowledged that residential development of the tract could be accomplished. His problem was the desire for more lots or other type development in order to accomplish a higher value for the tract. Similarly, and although not the burden of defendants, their witness, Mr. Dardick, demonstrated a desirable residential development complete with parking spaces, landscaping, and recreation area. According to him, other types of residential development were available for the site, and development along his ideas produced a value to the tract in excess of twice the appraisal made by Mr. Kraehe. Aside from the experts' opinions, there was evidence demonstrating the "fairly debatable" nature and the reasonableness of the council's determination to preclude substitution of an opinion by the court. The parcel is abutted by residential development on three of its sides, and such is the general character of usage in Florissant as shown by the zoning map. The map also shows recognition of areas for schools, parks, and commercial services to serve residential areas. Adequacy of present commercial facilities was demonstrated within one-half mile and one mile radii.

Respondent's position emphasizes his evidence of economic disadvantage. Further reference to the testimony of Mr. Kraehe and Mr. Dardick shows a difference of

opinion with respect to the difference in value of the property if available for commercial rather than residential use. Mr Kraehe found the property to have a value of $24,000 if developed residentially, and $119,000 if commercial user were available; however, Mr. Dardick felt that residential development could accomplish a value of $66,000 and stated no opinion on commercial development. Mr Kraehe, unlike Mr. Dardick, had made no study of available commercial facilities, and he conceded that property is generally more valuable if zoned for commercial rather than residential use. Such evidence is not a conclusive demonstration of "confiscatory" zoning; and Missouri courts have recognized that a valid exercise of zoning power may cause individual economic loss, but that does not render a zoning ordinance void as applied to such individual. State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S.W. 720, 726; Flora Realty & Inv. Co. v. City of Ladue, supra, 246 S.W.2d l. c. 779[8]; Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616, 625[9]; Wrigley Properties, Inc. v. City of Ladue, supra, 369 S.W.2d l. c. 402[5].

On this record it may not be said that the zoning classification of plaintiff's property as made by the city council is demonstrably unreasonable or arbitrary. For similar situations in which the courts have been precluded from interference with the legislative determination, see City of Monett v. Buchanan, Mo., 411 S.W.2d 108; Wrigley Properties, Inc. v. City of Ladue, supra; Deacon v. City of Ladue, supra.

Respondent relies principally on Huttig v. City of Richmond Heights, supra, but it bears an obvious distinction. There, intervening property owners attempted to prevent rezoning to commercial use of a vacant tract in which they had prior interest and which had become surrounded by commercial users. The court recognizes that "maintenance of the present zoning is primarily being defended for the collective benefit of private individuals." 372 S.W. 2d l. c. 843.

Respondent also emphasizes the history of his tract in its passage from farm land to his reservation of permissible commercial use, to commercial zoning, and to the present rezoning to residential use, to suggest that a city may not change a zoning classification once made if it differs with the best use according to the owner's opinion; but "a decision by a legislative body is not res judicata barring future consideration of the same question. If the council can legislate in anticipation of the needs of the community, obviously it must have the power to change or amend action taken when shown the needs did or did not develop as anticipated. To rule otherwise would stalemate the council in its legislative functions and prevent any action seeking adjustments for changing needs." Broadway Apartments, Inc., v. Longwell, Mo.App., 438 S.W.2d 451, 457.

Judgment reversed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.