**TEALIN COMPANY, a Missouri Corporation, Appellant,**

v.

**CITY OF LADUE, a Municipal Corporation, Respondent.**

No. 59250.

Supreme Court of Missouri, En Banc.

Sept. 13, 1976.

Rehearing Denied Oct. 12, 1976.

Carroll J. Donohue, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for appellant.

F. Douglas O'Leary, Moser, Marsalek, Carpenter, Jaeckel, Keaney & Brown, St. Louis, for respondent.

BARDGETT, Judge.

Plaintiff-appellant Tealin Company (Tealin), owner of a vacant lot in the city of Ladue, St. Louis county, sued in circuit court to enjoin the enforcement of Ladue's single-family, residential zoning ordinance as to Tealin's property on the grounds that the ordinance as applied to Tealin's property was unreasonable, unconstitutional, unlawful, and void. The circuit court held the ordinance reasonable and denied injunctive relief. On appeal to the Missouri Court of Appeals, St. Louis district, the judgment of the circuit court was reversed and the cause remanded with instructions to grant Tealin injunctive relief. Thereafter, this court granted Ladue's application to transfer pursuant to Art. V, section 10, Mo.Const., as amended 1970.

Prior to the filing of the circuit court suit, Tealin had applied to Ladue for a change of zoning to "F" commercial in order to permit the construction of a two-story-office building. Ladue's zoning and planning commission recommended against the rezoning and the city council denied the application for rezoning.

The city of Ladue is primarily a residential municipality located within the St. Louis metropolitan area and is a suburb of the city of St. Louis. It is located in the central part of St. Louis county and the east side of Lindbergh Boulevard forms the western boundary line of Ladue. Lindbergh at this point is a heavily-traveled, north-south, four-lane, divided highway.

Ladue became a fourth-class city in 1936 by the consolidation of three villages and established a zoning commission in 1937. A zoning ordinance was adopted in 1938. The property involved in this case became part of the city of Ladue by annexation in 1947. That annexation extended the western boundary one-fourth mile west to its present location at the east edge of Lindbergh, north to the city of Creve Coeur, and south to Huntleigh Village. The newly annexed territory was zoned single-family residential except for those portions where the existing use was commercial. The commer-

cially zoned areas consisted of a small zone on the southeast corner of Lindbergh and Conway fronting about two hundred feet on Lindbergh and two larger tracts located on the northeast and southeast corners of Lindbergh and Clayton Road. Conway is about one and one-fourth miles south of Tealin's property and Clayton Road is about two-thirds of a mile further south of Conway. Ladue's western boundary bordering on Lindbergh is about three miles long. All of the property bordering on Lindbergh in Ladue is and has been since 1947 zoned residential except for the three parcels noted.

The vacant lot which is the subject of this case is 1.11 acres in area. It is located at the extreme northwest corner of Ladue fronting 244.71 feet on Lindbergh and was part of a tract of land which, with the exception of this lot, was subdivided by Tealin's predecessor in title into a residential subdivision known as Tealbrook Estates containing thirty-one homes. The dividing line between Ladue and Creve Coeur runs east and west through the center of Tealbrook Estates and lies just a few feet to the north of Tealin's lot. South Tealbrook Drive abuts the south side of Tealin's lot and provides access on the south to Teal-brook. North Tealbrook Drive enters Lindbergh about four hundred feet north of the Tealin property. Between Tealin's lot and North Tealbrook Drive is a "jug handle" which permits northbound traffic on Lindbergh to turn around and proceed south on Lindbergh. North and South Tealbrook Drives form sort of a horseshoe "∩" with Tealin's lot and the "jug handle" located between the two sides of the horseshoe. The subdivision of Tealwood is in Creve Coeur and is located immediately north of Tealbrook. Tealwood is also zoned residential. North of Tealwood is a large Monsanto Company facility. The property fronting on the west side of Lindbergh is in Creve Coeur and in the main is zoned commercial and utilized as such with some exceptions. Pictured below is a portion of Ladue's exhibit B which, more than words can do, graphically portrays the relative location and use of property in Ladue.[1] The lot marked "T" is Tealin's property. "R" denotes existing residences. "V" denotes vacant lots. "C" denotes commercial and "S" denotes a school. All numbered lots are residential and as can be seen from the plat the residences in Ladue where the property abuts on Lindbergh are, with a few exceptions, reached by subdivision streets rather than directly from Lindbergh.

1. Exhibit B is color coded to the land use. Letters have been substituted for colors as it is not feasible to reproduce color here. The location of the city of Creve Coeur, the location of Tealwood subdivision, the location of commercial zoning in Creve Coeur on the west side of Lindbergh, and the general location of the Monsanto facility have been added in accordance with the evidence.

Tealin Company is a corporation formed by Mars Oil Company or its affiliate Marine Oil Company and took title to the lot in question. It was purchased for $21,500 by Tealin in June 1971 for the purpose of constructing a two-story-office building to be

used as the home office of Marine Petroleum Company and rental to other tenants. To this end, Tealin made application to Ladue in October 1971 for a rezoning to "F" commercial which was denied.

The import of Tealin's evidence in circuit court was that the single-family-zoning classification was unreasonable because the highest and best use of the property (the use most productive for the property owner, the surrounding neighborhood, and the city) was for office usage. One of Tealin's expert witnesses on urban regional planning testified that the negative influence of Lindbergh Boulevard—its heavy volume, noise reverberations, and having to look at the traffic—rendered the property unadaptable for a single-family residence. Another witness for Tealin testified that as zoned residential the property was worth $12,000 and if zoned commercial its value would be $97,000. Tealin's witnesses also testified that the proposed office development would serve as a protective buffer between Lindbergh and the Tealbrook residences and would not adversely affect the value of those residences. Tealin's evidence also emphasized the commercial use of property in Creve Coeur across Lindbergh from Ladue as a basis for arguing that the character of the region had changed substantially over the years.

Ladue's evidence was that Tealin's lot was reasonably usable for a single-family residence but that if so used the residence should front on Tealbrook (not Lindbergh) and that the planting of trees, shrubs, and the building of a fence would give protection from Lindbergh and its traffic. Most of the homes built on property abutting Lindbergh do not face Lindbergh and have utilized shrubs, trees, fences, etc., to shield the homes from noise and traffic emanating from Lindbergh.

Appellant Tealin's first point is: "The trial judge erred in upholding the single-family classification of plaintiff's property because the property cannot reasonably be used for single family purposes and residential zoning thereof bears no substantial relationship to the public health, safety, morals or general welfare."

The case principally relied upon by Tealin is *Huttig v. City of Richmond Heights*, 372 S.W.2d 833 (Mo.1963). The court of appeals, St. Louis district, considered *Huttig* to be parallel to the instant case, both as to factual and legal issues and, therefore, controlling of the decision.

The rules governing the resolution of the issues presented by the instant case were concisely stated in *Vatterott v. City of Florissant*, 462 S.W.2d 711, 713 (Mo.1971), as follows: "Whether the classification and enforcement of a zoning ordinance is reasonable and constitutional or whether it is arbitrary and unreasonable and therefore unconstitutional in its application to a specific property depends upon the evidence and the facts and circumstances of each case. *City of Richmond Heights v. Richmond Heights Memorial Post Benev. Ass'n*, 358 Mo. 70, 213 S.W.2d 479, 480[3]. As collected in *Desloge v. County of St. Louis, Mo.*, 431 S.W.2d 126, 131–132 [3–6]: The legislative body has the duty to determine the use classification for any particular area. Unless it appears that the determination by that body is arbitrary and unreasonable, the court cannot substitute an opinion for the council's determination. If the council's action is fairly debatable, the court cannot substitute its opinion. The legislative body's enactment is clothed with a presumption of validity, and he who would challenge the reasonableness of the ordinance as applied to specific property has the burden of proving unreasonableness. See also *Landau v. Levin*, 358 Mo. 77, 213 S.W.2d 483; *Flora Realty & Inv. Co. v. City of Ladue*, 362 Mo. 1025, 246 S.W.2d 771, 778; *Downing v. City of Joplin, Mo.*, 312 S.W.2d 81. These concepts apply equally to rezoning and refusal to rezone. *Wrigley Properties, Inc. v. City of Ladue, supra*, 369 S.W.2d 1. c. 400[3]."

The development of the city of Ladue through 1948 is set forth in *Flora Realty & Investment Co. v. City of Ladue, supra*. The evidence in the instant case establishes that Lindbergh is no longer the

western perimeter of the St. Louis metropolitan area but, as a result of the movement west of people, business, and industry, has now become the central north-south corridor of a heavily populated region within which is located substantial commercial and industrial establishments. Some municipalities such as Creve Coeur have zoned or rezoned strips of property abutting Lindbergh to commercial and, as noted, Ladue has done so at Clayton and Lindbergh. It seems obvious that commercial and business development of property naturally follows as a matter of course whenever substantial numbers of people live in an area and become·a viable market for the sale of goods and services by others. But this does not mean that just because there has been commercial development in a given area that zoning ordinances must automatically give way to an individual's desire to establish a business enterprise in a section zoned residential. Nor does it mean that just because the land will bring a higher price if used commercially rather than residentially that the residential zoning restrictions must give way to commercial usage. *Huttig v. City of Richmond Heights*, 372 S.W.2d at 840; *Flora Realty & Inv. Co. v. City of Ladue, supra*; *Wrigley Properties, Inc. v. City of Ladue, supra*. If the price land would bring for commercial use as compared to residential use were the criterion upon which the continued validity of a residential zoning ordinance depended, there would be few, if any, residentially zoned districts in a metropolitan area that would remain residential. This is so because it stands to reason that property in a heavily populated area that can be used for business or commercial purposes will command a higher price than if the use is restricted to single-family dwellings—a nonrevenue producing use for the occupants.

■ *Huttig* presented a situation where the city of Richmond Heights had zoned a strip of land along the south side of Clayton Road for commercial use beginning at a point about 732 feet west of Hanley Road, the west edge of the Huttig property, west to Brentwood Boulevard. Huttig's land began about two hundred feet west of Hanley Road and fronted 532 feet on Clayton Road and was zoned single-family residential. On the commercially zoned property beginning at Huttig's west property line, there were, respectively: "a restaurant (The Pancake House, built in 1934), a combination office building (Gulf Oil) and filling station, a vacant filling station, an occupied filling station, a Howard Johnson restaurant, a filling station, another office building and filling station (DX), a catering company, a restaurant, a florist shop, a drive-in restaurant, a filling station and another filling station. Some of these were built before 1941, some since. These uses extend to Brentwood Boulevard. . . . Another area of approximately 50 acres between plaintiffs' tract and Brentwood Boulevard has also been zoned 'G–1' and on this is located (somewhat back to the south of Clayton Road) a combination 48-lane bowling alley, restaurant and cocktail lounge." *Huttig, supra*, 372 S.W.2d at 835–836. The north side of Clayton Road between Hanley and Brentwood is in the city of Clayton and had been zoned and utilized commercially prior to and since 1941.[2]

The overall picture presented by *Huttig* is one where both sides of Clayton Road, a major thoroughfare, had been zoned, developed, and was being utilized for commercial establishments all the way from Hanley Road to Brentwood Boulevard, with the single exception of Huttig's property, and that Richmond Heights itself had zoned this entire south side of Clayton Road for commercial except for Huttig's property. There was no residential use being made of any of the property from Hanley to Brentwood.

Although not stated as such in the *Huttig* decision, it appears that whatever claim of reasonableness Richmond Heights may have had in the past for residential zoning on Clayton Road west of Hanley Road had long since been abandoned by its own acts in extensively rezoning the property west of Huttig's to commercial and allowing the

---

**2.** See *Huttig v. City of Richmond Heights*, 372 S.W.2d 833 (Mo.1963), for more detailed facts.

**550**

commercial development of the property to take place.

Under the facts in *Huttig*, the court concluded, *inter alia*, that "Clayton Road to the west of this property [city of Richmond Heights] is entirely commercial to a point beyond Brentwood Boulevard; Clayton Road across the street [city of Clayton] is entirely commercial for at least the same distance west, and for a block or more (Bettendorf's) to the east of Hanley Road. . . ." 372 S.W.2d at 839. Many other findings relating to the facts of *Huttig* were also announced.

There are some parallels between *Huttig* and the instant case, e. g., Clayton Road and Lindbergh Boulevard are heavily traveled; the property abutting the west side of Lindbergh in Creve Coeur and the property abutting the north side of Clayton Road in Clayton are zoned and used as commercial; there is a substantial difference in the value of both the Huttig property and the Tealin property depending on whether the property is zoned commercial or residential, but the points of differences between the two are more significant.

The overall picture presented by the facts of the instant case is a situation where the east side of Lindbergh in Ladue has no commercial development except for the three exceptions noted above; Ladue has consistently maintained residential zoning throughout its western boundary on Lindbergh (with the noted three exceptions), and the property is being used within the residential zoning restrictions. In short, this case presents a situation where Tealin wants to use this singular lot for a purpose contrary to the uses being made of virtually all of the property abutting on Lindbergh in Ladue, whereas Huttig desired to use his property on Clayton Road in Richmond Heights in conformity with the use being made of all of the other property fronting on Clayton from Hanley to west of Brentwood.

In *Huttig*, the court found that ". . . considering the regional development as well as the immediately adjoining property to the west in Richmond Heights, we find

that the nature of this tract is basically commercial." 372 S.W.2d at 840.

In the instant case, although the west side of Lindbergh in Creve Coeur has been zoned and developed into strip commercial, the opposite is clearly evident with respect to the east side of Lindbergh in Ladue, where, with the three exceptions noted, the development and use of property has been residential throughout Ladue's nearly three-mile-western boundary on Lindbergh.

This court finds the nature of the tract of land lying in Ladue abutting on Lindbergh, including Tealin's lot, is basically residential and the refusal on the part of Ladue to rezone Tealin's singular lot to commercial was not arbitrary; that the residential zoning classification as it applies to this area in Ladue generally, and as to Tealin's lot in particular, is not an unreasonable exercise of the zoning power granted to municipalities by section 89.020, RSMo 1969.

The judgment of the circuit court is affirmed.

All of the Judges concur.