STATE of Missouri, ex rel. COUNTY OF ST. CHARLES, Appellant,

v.

Herbert W. SAMUELSON, et al., Respondent.

No. 51465.

Missouri Court of Appeals, Eastern District, Division One.

June 2, 1987.

Norman C. Steimel, St. Charles, for appellant.

Claude C. Knight and Deborah Tomich, St. Charles, for respondent.

SATZ, Presiding Judge.

This is an action to enforce a Zoning Order. Plaintiff, St. Charles County (County), sought to enjoin defendant, Herbert Samuelson (Samuelson), from conduct alleged to be prohibited in a district zoned agricultural. The trial court entered judgment for Samuelson. The County appeals. We reverse and remand with directions.

Samuelson owns and resides on a parcel of land zoned "A–2, Agricultural", under the County's Zoning Order.[1] The County alleged that Samuelson "operates an asphalt paving business from and upon" his property and sought to enjoin Samuelson from "all commercial activity ... which is not in accord with zoning regulations" and from "engaging in any activity ... prohibited by the zoning regulations". Samuelson did not file a motion to make more definite and certain. In his answer, he denied the County's allegations and raised, as affirmative defenses, the unconstitutionality of the Zoning Order and his use of his land as a prior nonconforming use.

The trial court found Samuelson did "own and operate an asphalt paving business". The court did not, however, determine whether Samuelson was or was not operating his asphalt paving business on his land. What the court did find, was: "the activity actually complained of ... consisted of the storage of trucks and equipment of an asphalt paving business and their movement to and from [Samuelson's] property". The court also found "the asphalt is obtained from an asphalt company at a separate business and at a separate location". To prohibit this activity, on the record before it, the court concluded, "would be arbitrary and unreasonable and therefore unenforceable".

---

1. The legislative body in St. Charles County is the County Commission. Its enactments are designated "Orders" rather than "Ordinances".

The reasoning supporting the court's conclusion is based upon its interpretation of the pertinent language of the Zoning Order and several legal maxims. The court noted the commercial enterprises which are permitted uses as well as conditional uses in an "A–2 agricultural district".[2] Conducting these enterprises, the court reasoned, "could obviously involve the use of heavy equipment coming in and out" of the land. Moreover, the court noted, the business of asphalt paving "is nowhere designated in the zoning order as either a permitted or conditional use under any of the districts designated". This particular activity in question, the court reasoned, "is not so clearly prohibited by the Revised Zoning Order as to require [it], in the exercise of its sound discretion, to enjoin that activity". Also, the court stated, "zoning which would prohibit this activity [on the present record] ... would be arbitrary and unreasonable and therefore unenforceable". The trial court misread the Zoning Order and reached the wrong conclusion.

The Zoning Order in question is an example of permissive zoning. *See, e.g. State ex rel. Barnett v. Sappington*, 266 S.W.2d 774, 776 (Mo.App.1954). The Order divides St. Charles County into approximately 21 districts and expressly prescribes the uses permitted within the districts. *Table of Contents, St. Louis County Zoning Order.*[3] With certain qualifications, any use not expressly permitted within a district is prohibited. § 4. Devices for flexibility, such as "conditional uses" and "variances", are built into this comprehensive scheme. This allows for controlled deviation from strict application of the Order. This is not to say, however, that a use is permitted if, but only if, it is explicitly stated in a list of permitted uses. The permitted uses may be explicitly expressed uses or may belong to a group of uses in a generically expressed category. Thus, the "M–1 Light Industrial district" permits specific industrial plants such as "(b) Bakery, bottling, dairy or food packaging plant" and also permits the more generic industrial plants such as "(f) chemical laboratories not producing noxious fumes or odors".

■ Admittedly, the Zoning Order does not expressly and explicitly permit an "asphalt paving business" nor does it expressly and explicitly permit "the storage or parking of trucks used in the asphalt paving business". This does not mean neither one nor both of these uses are completely prohibited. Both of these uses would be allowed in the "M–2 Heavy Industrial district" which permits "any use", except for certain conditional uses, and two of these conditional uses are "(n) Petroleum or asphalt refining" and "(o) Petroleum products terminal". Moreover, Samuelson's "storage of asphalt trucks", as found by the court, is permitted in an "M–1 Light Industrial district" which permits "(c) Bus, rail or truck terminal and moving, transfer or storage plants" and "(p) Sales area and bulk storage yard or warehouse for such materials as: asphalt, ... building materials, ... contractors' equipment ..., machinery ... tar, tar or creosoted products...." Thus, the Zoning Order does permit Samuelson's operation in districts other than agricultural.

■ In addition, we do not agree with the trial court's conclusion that Samuelson's operation is permitted in an "A–1 or A–2 Agricultural district", nor do we agree with the reasoning the court used to reach that conclusion. First, to show the agricultural district permits uses comparable to

---

**2.** The trial court noted permissive uses in an A–2 district include "apiaries, aviaries, fish hatcheries, and fur farming or the raising of fur-bearing animals", "kennels", "privately operated recreational facilities including a lake, swimming pools, tennis court or riding stable", "golf course and club house", "ferry landings and boat docks", "sewage treatment plants, oxidation basins and related facilities, water supply plants, pumps, reservoirs, wells and elevated storage tanks ..." and conditional uses include

"logging operations, sawmills, and mill storage of lumber", "airports" and "landing fields".

The court, however, did not specifically note the permitted use of agricultural farming and the vehicles and machinery "incidental to ... agricultural uses".

**3.** All Section references are to the Zoning Order in issue, which was admitted into evidence at trial.

Samuelson's operation, the court noted that "logging operations, sawmills, mill storage of lumber", and "airports and landing fields" are "conditional uses". "Some of these operations", the court reasoned, "could obviously involve the use of heavy equipment coming in and out". This reasoning is not persuasive. Those uses are, as noted, "conditional uses" and, thus, would be permitted only after an investigation and a public hearing conducted by the Planning and Zoning Commission. The Commission then makes a recommendation to the County Court. This is the method chosen by the County to control deviations from its Zoning Order. Thus, these County tribunals must exercise their discretion before a conditional use can become a permitted use.

■ The court also noted the commercial enterprises which are in fact permitted, and it reasoned these enterprises would involve use of "heavy equipment coming in and out". Simply stated, this is no more than saying a truck is a truck is a truck. That is not persuasive. If the County wanted to permit any and all "storage" of trucks, it would have said so.[4] The Zoning Order reflects careful thought and precise draftsmanship. It divides the County in 21 districts. The permitted uses in each vary from eight to any use and the conditional uses in each vary from none to eighteen. In addition, there are some 12 pages of definitions of those terms used in the Order. This means the draftsmen were sensitive to imperfections in language. In effect, "[t]hey seek to repair in advance the damage which may result from misconstruction by employing words of art, by using common words to express their common meanings, or by defining words which are used in restricted sense". 3 Anderson, *American Law of Zoning,* § 18.01 (1986). This specificity is an attempt to prevent the use of maxims of construction to thwart the purpose of the Zoning Order. *Id.*

Admittedly, there must be an interpretation of this Zoning Order as with any zoning ordinance. It simply comes down to where the line should be drawn. There is no evidence here demonstrating the similarity between those vehicles used in farming and Samuelson's vehicles. Moreover, the trial court was not asked to take judicial notice of this alleged similarity as a recognized or commonly accepted fact. Given the trial court's logic, we can envision the agricultural district in question interpreted to permit any truck or piece of heavy equipment. To us, this is nothing more than a judicial redrafting of the Zoning Order to fit the needs perceived by the court rather than those perceived by the County. The best that can be said for Samuelson is the meaning of the Zoning Order may be fairly debatable. If so, we cannot substitute our opinion for that of the County Court, the legislative body that passed the Order. *Vaterott v. City of Florissant,* 462 S.W.2d 711, 713 (Mo.1971).

■ Moreover, the maxims used by the court do not strengthen its reasoning.[5] Maxims and rules of construction are used by the courts to explain results as well as to reach them. In fact, we can match each rule of construction with its opposite, leaving the entire matter to the unfettered discretion of the court. *See, e.g.,* 3

---

4. The trial court does not state whether it is using "storage" as a term of art. This Court has held "storage" is a term of art when used in a zoning ordinance and it has a meaning distinct from the term "parking". *See, e.g., St. Louis County v. Pfitzner,* 657 S.W.2d 262, 264 (Mo.App. 1983).

5. These maxims are:
   "If public interest served by the zoning is greatly outweighed by the detriment to private interest, the zoning is considered arbitrary and unreasonable and, therefore, violation of due process."

   "Mandatory injunction is harsh remedy to be granted by court only when right thereto is clearly established and should never be granted on doubtful proof."

   "Injunctive relief appeals to the sound discretion of the court and is to be applied with the utmost caution and exercised with great discretion and only when necessity requires, particularly where it is sought to enjoin the use of property in a legitimate business."

   "The court's discretion is to be exercised in accordance with well settled equitable principles and in light of all facts and circumstances of the case."

Anderson, *American Law of Zoning,* § 18.07 (2 ed. 1977).

Accordingly, we reverse and remand this cause and direct the trial court to enter an appropriate order enjoining defendant Herbert Samuelson from storing or parking the trucks and equipment used in his asphalt paving business on the land in question.

CRIST and KELLY, JJ., concur.