Rocky RENICK, Plaintiff–Respondent,

v.

**CITY OF MARYLAND HEIGHTS,**
**Defendant–Appellant.**

No. 54782.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 28, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 3, 1989.

Howard Paperner, Timothy J. Walk, Clayton, for defendant-appellant.

David G. Dempsey, St. Louis, for plaintiff-respondent.

HAMILTON, Judge.

The City of Maryland Heights appeals from the judgment of the trial court that found the zoning of Respondent-landowner's property for residential use to be arbitrary, capricious, and, therefore, unconstitutional. The judgment of the trial court is affirmed in part and reversed in part, as modified.

Respondent owns a parcel of land in the City of Maryland Heights near the intersection of Dorsett Road and Interstate 270. To the south is a Denny's Restaurant located on the north side of the intersection of Dorsett Road and Interstate 270. On the south side of that intersection is a gasoline service station, a hotel, and apartments.

To the west of the parcel along Dorsett Road are the Spanish Trace Apartments, a shopping center containing fast food restaurants, a gasoline service station, and a retail shop.

Immediately north of Respondent's land is Old Dorsett Road, which runs in an east-west direction between Interstate 270 and McKelvey Road. Proceeding north from Old Dorsett Road between McKelvey Road and Interstate 270 is a church, some residences, another church, and, on the south side of the intersection of McKelvey and Ameling Roads, a restaurant. On the northwest corner of that intersection is a strip shopping center; on the northeast corner is a vacant lot used for parking.

To the east of the parcel is Interstate 270. East of the Interstate are two motels, a restaurant, a three-story office building, a strip office-type center, a retail store, a Union Electric substation, a storage area, and several residences.

In May, 1985, Progressive Developments, Inc. (hereinafter, Progressive) entered into a contract with Respondent to buy his parcel of land in Maryland Heights to construct a four-story office building. In September, 1985, Progressive, as agent for Respondent, filed a petition for a change of zoning with the City Council of Maryland Heights by which it sought to change the parcel's zoning classification from R–3 (single family) to C–8 (commercial).

Pursuant to local zoning regulations that require a recommendation by the Planning Commission before a petition is considered by the City Council, Progressive, on October 23, 1985, presented its zoning change to the Planning and Zoning Commission. The Commission considered problems of increased traffic and of access to the site. Robert Varusa, the Administrator of Planning and Zoning, initially rejected the rezoning because of increased traffic, the failure to indicate storm water facilities on the site plan, and the need to relocate power lines.

At the November meeting of the Planning and Zoning Commission, Progressive produced a storm-water drainage map. Further action on the matter was tabled, pending preparation of a traffic impact study. Following receipt of that study, the Administrator and the Planning and Zoning Commission, at its January meeting, recom-

mended approval of the zoning change subject to certain conditions.

On February 6, 1986, the City Council, by a vote of 5 to 4, approved the rezoning, known as Bill No. 199, on its first reading. At a public hearing February 20, 1986, opponents of Bill 199 expressed concern that it constituted "spot zoning" and failed adequately to address traffic considerations. Residents of Maryland Heights signed petitions in opposition to the rezoning and the construction of an office building. On February 20, 1986, having failed to carry on its second reading, Bill 199 was defeated.

Respondent thereafter filed a declaratory judgment action in St. Louis County Circuit Court alleging that the present zoning of Respondent's parcel "for residential use" and the failure of the City to zone it for "office use" were unconstitutional.

Although not raised by the parties in their briefs, this Court is obligated initially to consider two questions of jurisdiction which are apparent from the record. *ABC Fireproof Warehouse Co. v. Clemans*, 658 S.W.2d 28, 30 (Mo. banc 1983); *Ahern v. Turner*, 732 S.W.2d 261, 262 (Mo.App. 1987).

■ Respondent's petition for rezoning, petition for declaratory relief, and request for admissions (which were unanswered and, therefore, deemed admitted) aver ownership of a parcel of land containing 2.5 acres. During trial, counsel for the City asserted that Respondent owned 1.38 acres, not 2.5 acres. In response, Respondent, through his attorney, informed the Court that counsel for the City was correct. Moreover, he stated that his client had a contract to purchase the remaining acreage from the Missouri Highway Department. The City disputed any contractual interest of Respondent in the remaining property,

and the record contains neither a contract nor a deed transferring an interest to Respondent. The record, therefore, demonstrates ownership by Respondent in only 1.38 acres of the 2.5 acre tract.[1]

A declaratory judgment is available only to a party who has a legally protectable interest, that is, a "substantial 'right, status, or other legal' relation that the defendant has some power to affect." *Allen v. Coffel*, 488 S.W.2d 671, 674 (Mo.App.1972) (relying on *Cotton v. Iowa Mut. Liab. Co.*, 251 S.W.2d 246, 249 (Mo.1952); and on Borchard, *Declaratory Judgments*, 48–50). § 527.020 RS Mo.1986. Respondent, on the record before us, has established a legally protectable interest in 1.38 acres, not in the entire 2.5 acres as averred. Accordingly, the judgment of the trial court is vacated to the extent it affects property not owned by Respondent.

The jurisdictional predicate necessary for a trial court to render declaratory relief is the existence of a justiciable controversy between the parties concerning their respective legal rights and duties, admitting specific relief through a conclusive decree, as distinguished from an advisory one. *Wentzville Pub. School Dist. v. Paulson*, 699 S.W.2d 132, 133 (Mo.App.1985). A plaintiff must show that he has a legally protectable interest at stake and that the question presented is ripe for judicial determination. The facts on which that determination is made must have accrued in order for the judgment to declare the existing law on an existing state of facts. *City of Jackson v. Heritage Sav. & Loan Ass'n*, 639 S.W.2d 142, 144 (Mo.App.1982).

■ In the present action, a justiciable controversy exists only with respect to R–3 zoning, the classification that applied to Respondent's parcel when suit was filed

---

1. Respondent's attorney contended at trial that the unanswered request for admission stating that Respondent was the owner of the entire 2.5 acre parcel was a judicial admission binding upon the trial court. We disagree that it is binding evidence under the particular circumstances presented.

In response to a direct question from the Court, Respondent's attorney, having consulted with his client, agreed with the City's attorney that Respondent owned only 1.38 acres. This representation, to which both attorneys agreed, was tantamount to a stipulation by counsel which, for purposes of determining jurisdiction, amended the earlier judicial admission based upon an unanswered request for admission. *Cf. Killian Constr. Co. v. Tri–City Constr. Co.*, 693 S.W.2d 819, 826–28 (Mo.App.1985).

and when the trial court issued its judgment.

Following the trial on the merits, the trial court, however, found Respondent's parcel "zoned for single-family residential use under the Comprehensive Zoning Ordinance of the City although the planning consultant for the City has recommended that it be rezoned for multi-family residential use under a new comprehensive ordinance which has not yet been adopted by the City." The trial court additionally found that development of the parcel was economically unfeasible for single-family or multi-family use and that the parcel would be worth substantially more if not zoned for residential use. Based upon these findings, the trial court concluded: first, that Respondent sustained a clear detriment to his property rights as a result of the present zoning and would sustain a clear detriment if the parcel were zoned for multi-family use; and second, that zoning the parcel for either single-family or multi-family use was arbitrary, capricious, and therefore, unconstitutional.

The record fails to support the foregoing findings of fact and conclusions of law with respect to any zoning other than R–3. Judicial review in zoning cases is limited to consideration of the reasonableness of existing zoning; it does not permit usurpation of the legislative prerogative to enact zoning ordinances. *Home Bldg. Co. v. City of Kansas City*, 666 S.W.2d 816, 819 (Mo.App. 1984). Although multi-family residential zoning was recommended for Respondent's parcel under a new comprehensive zoning ordinance, that new ordinance remains unadopted according to the record before this Court. Consequently, the trial court exceeded its jurisdiction by invalidating all residential zoning of the parcel in question, other than R–3 (single-family residences).

In its first point, Appellant asserts the trial court erred when it invalidated the continued application of R–3 zoning to Respondent's parcel of land.

A zoning ordinance is presumed valid. *City of Ladue v. Horn*, 720 S.W.2d 745, 747 (Mo.App.1986). One who challenges the reasonableness of a zoning ordinance as applied to specific property has the burden to prove its unreasonableness. *Treme v. St. Louis County*, 609 S.W.2d 706, 714 (Mo.App.1980) (quoting *Vatterott v. City of Florissant*, 462 S.W.2d 711, 713 (Mo.App.1971)). Whether application of the ordinance to a particular parcel is reasonable and constitutional or arbitrary and unconstitutional depends upon the facts, circumstances, and evidence in each case. *Loomstein v. St. Louis County*, 609 S.W. 2d 443, 446 (Mo.App.1980) (quoting *Vatterott*, 462 S.W.2d at 713). A zoning ordinance is lawful, moreover, only if it bears a substantial relation to public health, safety, morals, or general welfare. *Flora Realty & Investment Co. v. City of Ladue*, 246 S.W.2d 771, 778–79 (Mo. banc 1952); § 89.020 RS Mo. (1986). The basic question becomes "considering all [the] circumstances and facts, is the extent of the public interest and welfare great enough to outweigh the demonstrated detriment to the individual interests, and in the final analysis is this question a debatable one?" *Huttig v. City of Richmond Heights*, 372 S.W.2d 833, 843 (Mo.1963).[2]

Review of a zoning decision, therefore, requires a two-step analysis. First, the court must examine the evidence of the property owner to determine whether he has rebutted the presumption of reasonableness of the present zoning. Second, the Court must examine the government's evidence to determine whether continuation of the present zoning is a fairly debatable issue. *Home Bldg. Co.*, 666 S.W.2d at 819. If the municipal zoning action is fairly debatable, the court cannot substitute its opinion for that of the legislative body. *Despotis v. City of Sunset Hills*, 619 S.W.2d 814, 820 (Mo.App.1981).

---

**2.** One commentator has detected a shift in the burden of proof articulated by the Supreme Court in *Huttig, supra,* and by the Eastern District in *Loomstein, supra,* at 447. To the extent that may be so, we explicitly adopt the Supreme Court's standard as controlling. *See, Robert's Arbitrary Refusal to Rezone—Answers and Questions Above the Fairly Debatable Test,* J.Mo.Bar 503, 504–05 (1982).

█ In this case, Respondent has demonstrated that continuation of the present zoning made development of his property unfeasible. Through the expert testimony of Jason Weissenburger, an acoustical engineer who made a sound study of the parcel in question, Respondent demonstrated that the prevailing noise levels rendered the property unsuitable for residential use because they exceeded the normally acceptable noise levels promulgated by the Department of Housing and Urban Development and by St. Louis County.

Gary Crabtree, vice-president of planning for Fox and Cole, Inc. and the land-use supervisor for St. Louis County from 1972 to 1986, testified, that in his experience as a planner, having residential or living quarters next to a highway created instability and diminished land value. He alluded to the problem of highway noise, and he noted that his own clients shied away from placing residential developments next to a highway. In his expert opinion, Crabtree considered Respondent's parcel to be inappropriately located for single-family residential use. Moreover, he testified that good planning avoids placing single-family lots proximate to interstate highways and provides, instead, substantial buffering or transition functions between residences and highways.

The foregoing evidence rebutted the presumption of validity initially accorded the current R–3 zoning. Consequently, the burden shifted to Appellant to demonstrate that development of Respondent's parcel under R–3 zoning was a fairly debatable issue.

The thrust of Appellant's evidence at trial, however, was to demonstrate the feasibility of developing Respondent's property for multi-family use and the unfeasibility of commercial use. Appellant failed to offer evidence that development of the parcel as zoned was feasible.

Arthur Niemoeller, an acoustical consultant called by Appellant, agreed with the findings of Jason Weissenburger as to the noise levels on the property. Although initially declining to give an opinion on whether those noise levels militated against resi-

dential use and favored commercial use, he later admitted, in response to a question posed by the trial court, that he would not recommend construction of single or multi-family residences along the highway. He further conceded that the highway would have a negative impact on whatever is put on the property.

John Brancaglione, the manager of the planning division for Campbell Design Group, testified that the appropriate use for Respondent's parcel was multi-family, that is, apartment or condominium development, because that use was in keeping with what was already there. Moreover, he did not think the parcel in question was a suitable site for single-family residential use because it was bordered on the west by multi-family use and on the north by institutional (church) use.

Appellant's final witness, Robert Varusa, the Planning and Zoning Administrator of Maryland Heights, admitted that the parcel in question was not the best location for a single family, and he himself would not want to live on it in a single family residence. He believed the more appropriate use was multi-family, which would be compatible with the adjacent use.

Upon examination of Appellant's evidence, we find nothing to contradict Respondent's evidence that development of the property as zoned is not feasible. In fact, Appellant's evidence supported that of Respondent on this issue. Continuation of the present zoning is not, therefore, fairly debatable. Having failed to rebut Respondent's evidence that the existing zoning is arbitrary and unreasonable, the property owner is entitled to prevail. *Home Bldg. Co.*, 666 S.W.2d at 818.

At trial, both parties presented substantial evidence and engaged in extensive debate concerning the merits of Respondent's proposed office building and the commercial viability of multi-family use of the parcel. That evidence and that debate are irrelevant to the issue before us: the constitutionality of the continued application of R–3 zoning to Respondent's parcel. Any unconstitutionality arises from the continued application of a particular zoning clas-

sification, not from the refusal of a legislative body to rezone. 2 A. Rathkopf, *The Law of Zoning and Planning* 27–40 n. 99 (1988). Zoning is a legislative act. *Strandberg v. Kansas City*, 415 S.W.2d 737, 742 (Mo. banc 1967); *Loomstein, supra,* at 446 (relying on *Vatterott,* 462 S.W. 2d at 713). Therefore, a court cannot prescribe what zoning shall be applied to a particular property. The limit of judicial relief upon finding the existing zoning unreasonable is to require the governmental authority to adopt a reasonable zoning classification for the property. *Home Bldg. Co.,* 666 S.W.2d at 821.

We conclude that to retain the R–3 zoning classification of Respondent's 1.38 acre parcel of land is unreasonable, arbitrary and violative of Respondent's due process rights under Article I, § 10 of the Missouri Constitution and the Fourteenth Amendment of the United States Constitution.

The trial court additionally concluded that the R–3 zoning of the parcel constituted a taking of Respondent's land for public use without just compensation in violation of the Missouri and Federal Constitutions. Because neither attorney briefed this issue and because we can decide this case on other grounds, it is unnecessary for us to review this conclusion.

In its second point on appeal, Appellant contends the trial court erred by its failure to make certain findings of fact requested by Appellant pursuant to Mo.R. Civ.P. 73.01(a)(2). We hold that the failure of the trial court to make all of the requested findings does not materially affect the merits of this action; and, accordingly, reversal is not required. *Lopez v. Vance,* 509 S.W.2d 197, 204 (Mo.App.1974); Mo.R. Civ.P. 84.13(b).

Judgment affirmed in part and reversed in part, as modified.

DOWD, P.J., and SIMON, J., concur.