George G. WHITE and Martha F.
White, Plaintiffs–Appellants.

v.

CITY OF BRENTWOOD,
Defendant–Respondent.

No. 57503.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 23, 1990.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Dec. 5, 1990.

Application to Transfer Denied
Jan. 9, 1991.

Steven W. Koslovsky, Keady Vincent, Clayton, for plaintiffs-appellants.

Daniel George Tobben, Daniel Thomas Glowski, St. Louis, for defendant-respondent.

SATZ, Presiding Judge.

Plaintiffs, George G. and Martha White, challenge the reasonableness of the residential zoning of their property at 1919 South Brentwood in defendant City of Brentwood (City). The trial court found the residential zoning to be reasonable. Plaintiffs appeal. We affirm.

The property in question is shown in the appended schematic diagram taken from one of plaintiffs' exhibits and not drawn to scale.

Plaintiffs purchased the tract and brick residence at 1919 South Brentwood Boulevard in November 1986. For forty years prior to plaintiffs' purchase, the residence was continuously occupied. Plaintiffs purchased the property for use by their son as a chiropractor's office. Plaintiffs have not resided in the house nor attempted to rent or sell it as a residence. The property was, at the time of plaintiffs' purchase in 1986, and is currently zoned in the "B" Residential District under the Zoning Ordinance of the City. This zoning does not permit its use as a professional office.

The brick residence faces Kenilworth Lane and was formerly known as 1829 Kenilworth. Kenilworth is a residential street with about 55 single-family houses running from Eager Road south to intersect Brentwood Boulevard, a five-lane north-south arterial roadway in St. Louis County. Brentwood runs from the northeast to the southwest at the point it intersects Kenilworth. The lot sits on the west corner of the intersection. The house is sited near the northwest edge of the lot and sits 40 to 50 feet from Brentwood Boulevard.

The property is bounded on the southwest by Wrenwood Lane, and on the northwest by the residence of Mary Dimza on Kenilworth Lane. The Dimza residence is separated from the plaintiffs' property by two driveways, each eight feet wide. Across Wrenwood Lane directly to the west of the plaintiffs' property is a large open area containing a lake and a fountain surrounded by multi-family residences.

Brentwood Boulevard in the vicinity of the plaintiffs' property is a mixture of residential and commercial uses. There are five homes on Brentwood Boulevard within one block of the plaintiffs' property which are zoned "B" residential and used as residences. One is the house across Kenilworth Lane, the Stuerman residence, and four are one block south of the plaintiffs' property on the east side of Brentwood between Pine Avenue and Lawn Avenue. There are 13 residences on Brentwood Boulevard within seven blocks of the plaintiffs' property which are zoned "PD" planned development or "RSC" light commercial[1] but which are still used for residential purposes. There are five converted residences within four blocks of the subject property which are zoned "RSC" or "PD" and used for commercial purposes. There are several shopping centers and office buildings on Brentwood Boulevard in the immediate vicinity of the plaintiffs' property, including Brentwood Square Shopping Center due

---

1. The "RSC" retail service commercial district is intended to accommodate convenience retail shopping, services and professional offices which are compatible in scale and intensity of use with adjacent residential structures. It permits a variety of light retail and service businesses and similar uses on larger lots, and professional office on smaller lots. Sec. 25–257, City of Brentwood Code of Ordinances.

The "PD" planned development overlay district is a flexible zoning classification intended to encourage the planned development of the districted area for retail, office and multifamily residential uses as appropriate in accord with the City's development plan. Sec. 25–259, City of Brentwood Code of Ordinances.

north of the Stuerman residence, and a small strip shopping center directly across Brentwood from plaintiffs' property. Each is zoned "RSC" or "PD".

About 200 feet northeast of plaintiffs' property, Brentwood Boulevard bends to run due north. North of the bend, approximately four blocks, Highway 40 crosses Brentwood and there is an interchange between Interstate 170, Highway 40 and Brentwood Boulevard. In this area, there are several high-rise office buildings, including the Landmark Bank building, which is zoned RSC commercial. The Landmark Bank building abuts the Brentwood Boulevard exit ramp from Highway 40 eastbound. The Landmark Bank parking garage is on the opposite end of Kenilworth Lane from the plaintiffs' property. There are 32 houses on the west side of Kenilworth separating plaintiffs' property from the Landmark Bank and garage.

In December 1986, plaintiffs applied to the Board of Aldermen of the City to rezone their property from the "B" Residential to the "RSC" Commercial District. The City denied the application. Plaintiffs' petition for review was denied by the trial court. This appeal followed.

█ The basis for requiring zoning to be reasonable and the criteria for determining the zoning's reasonableness are well known. The due process clauses of both the Fourteenth Amendment to the U.S. Constitution and Article 1, Section 10 of the Missouri Constitution, require zoning to bear a substantial relationship to health, safety, morals or the public welfare. *Flora Realty & Investment Co. v. City of Ladue*, 246 S.W.2d 771, 778 (Mo. banc 1952), *appeal dismissed* in 344 U.S. 802, 73 S.Ct. 41, 97 L.Ed. 626 (1952); *Elam v. City of St. Ann*, 784 S.W.2d 330, 334 (Mo.App. 1990). The constitutional standard is essentially one of reasonableness. *Vatterott v. City of Florissant*, 462 S.W.2d 711, 713 (Mo.1971); *Elam, supra.*

█ Zoning may be unreasonable on its face or as applied to a particular tract of land. In Missouri, to determine whether the zoning is reasonable as to a particular tract of land, we not only determine whether application of the zoning is substantially related to the alleged purpose of the zoning, we also consider the private detriment caused by the application. *See Huttig v. City of Richmond Heights*, 372 S.W.2d 833 (Mo.1963); *Elam, supra.* Thus, in Missouri, even when zoning does substantially relate to the public welfare, the zoning may be considered unconstitutionally unreasonable if its demonstrated detriment to private interests outweighs the public benefit from retaining it. *See Huttig*, 372 S.W.2d at 842; *Elam, supra.* As this test for reasonableness implies, it is labeled the "balancing of interests" test. *See,* Rathkopf, *The Law of Zoning and Planning,* § 6.03, p. 6–12 (1989).

We have detailed our standard for reviewing the reasonableness of zoning in *Elam, supra,* 784 S.W.2d at 335:

Since zoning and refusal to rezone are legislative acts, ..., we review de novo any challenges to their validity.... Zoning ordinances are presumed to be valid. This presumption is rebuttable, and the challenger bears the burden of proving an ordinance's unreasonableness as applied to his property....

Any uncertainty about the reasonableness of a zoning regulation must be resolved in the government's favor: if the issue is at least fairly debatable, the reviewing court may not substitute its opinion for that of the zoning authority which enacted the challenged ordinance.... The analytical framework for reviewing zoning decisions is well settled: "First, the court reviews the property owner's evidence to determine whether the owner has rebutted the presumption that continuation of the present zoning was reasonable; and second, the court reviews the government's evidence to determine whether such evidence makes the continuance of the present zoning fairly debatable." ... (citations omitted)

■ On appeal, plaintiffs argue that the detriment to their private interest in the reasonable use of their property outweighs any public interest of the City in maintaining residential zoning because (a) the property abuts Brentwood Boulevard, a "major arterial roadway in St. Louis County"; (b) "virtually" all other properties which abut Brentwood Boulevard in the vicinity of the subject property are zoned for or devoted to commercial uses; and (c) many residential streets do not suffer ill effects from the commercial uses of property at their intersections with Brentwood Boulevard.

As paraphrased, plaintiffs three-pronged argument is simply plaintiffs' statement of their perception of the facts. In the context of Missouri's "balancing test," we understand plaintiffs' argument to be two-fold. First, plaintiffs argue their property abuts Brentwood Boulevard, a heavily travelled street, lined with commercial uses; this location makes plaintiffs' property unsuitable for use as a residence; and, therefore, the residential zoning in issue causes defendant a detriment. Second, plaintiffs argue the commercial use of their property would fit comfortably within the general pattern of commercial uses along Brentwood Boulevard, and, plaintiffs contend, other nearby residential neighborhoods are not adversely affected by commercial uses at their intersections with Brentwood Boulevard; therefore, plaintiffs reason, there is little or no public benefit in preventing plaintiffs' commercial use of their property. In short, plaintiffs' private detriment outweighs the public benefit.

Plaintiffs' arguments are not persuasive. Our review of the evidence does not show plaintiffs rebutted the presumption that the residential zoning is reasonable. More important, plaintiffs' evidence fails to establish that the reasonableness of this zoning was not fairly debatable. We address the "reasonably debatable" issue.

Factors which show private detriment include the adaptability of the subject property to its zoned use and the effect of zoning on property value. *Elam, supra,* at 335.

Plaintiffs presented some evidence regarding the adaptability of their property to residential use. Mr. White believed the property was unsuitable for residential purposes. John R. Baggs, a land planner, testified that the traffic on Brentwood Boulevard has a negative effect on the residential use of the property. He also testified there would be fewer buyers for a house abutting Brentwood Boulevard.

Mr. White also believed the fair market value of his property at time of trial was $45,000 as zoned. John Hottle, a real estate appraiser, estimated the property's value to be $40,000. Plaintiffs paid $55,000 to purchase the property in 1986, but estimated its actual value at that time to be $45,000. Mr. White said the property would be worth $150,000 under an "RSC" commercial zoning. Mr. Hottle, the appraiser, testified the lot would be worth $90,000 to $100,000 if so zoned.

This evidence does not show the residential zoning to be unreasonable. To the contrary, this evidence clearly shows the house retains substantial value zoned residential, and even plaintiff's expert, Mr. Baggs, agreed the house could be sold as a residence. The "noise and traffic" on Brentwood Boulevard did not make the house unsuitable for residential use. The house faces a side street and sits some 40 to 50 feet away from Brentwood.

■ Plaintiffs' evidence, however, does show their property is worth less as a residence than it would be under "RSC" zoning. This is a detriment attributable to zoning; it is, however, one which we do not afford significant weight. In *Tealin Co. v. City of Ladue,* 541 S.W.2d 544 (Mo. banc 1976) the Court said, "[i]f the price land would bring for commercial use as compared to residential use were the criterion upon which the continued validity of a residential zoning ordinance depended, there would be few, if any, residentially zoned districts in a metropolitan area which would remain residential." The reason, the Court explained, is that land in heavily

populated areas which may be used for income-producing purposes will almost always command a higher price. *Id.* Thus, showing a mere difference in value under different zoning does not establish a private detriment substantial enough to require a zoning change. *Id; see, e.g. Gerchen v. Ladue,* 784 S.W.2d 232 (Mo.App. 1990).

The difference in value shown here is not even particularly large compared to earlier cases. The property in *Tealin, supra,* would have been more than eight times as valuable if zoned commercial, *Id.* at 548; the land at issue in *Gerchen, supra,* would have been more than 10 times as valuable. *Id.* at 235. In neither case was rezoning ordered. Plaintiffs have shown a detriment, but one not substantially greater than that which we accept as the natural consequence of zoning. *See, e.g., Tealin, supra* at 549.

Moreover, when plaintiffs purchased their property, it was zoned residential. Plaintiffs, therefore, cannot sensibly argue that this residential zoning frustrates a legitimate investment backed expectation.

■ Plaintiffs also attempted to show the public benefit from this residential zoning was small. Factors relevant to the determination of a public benefit include the character of the neighborhood, the zoning and uses of nearby property and the effect that a change in the zoning would have on other property in the area. *Elam, supra,* at 336; *West Lake Quarry v. Bridgeton,* 761 S.W.2d 749, 751 (Mo.App. 1988).

Mr. Baggs, plaintiffs' land planner, testified that Brentwood Boulevard is "overwhelmingly commercial", with only five parcels fronting or abutting Brentwood that were still zoned residential. Mr. Baggs also testified that other neighborhoods with commercial uses along their intersections with Brentwood Boulevard have not suffered ill effects from those uses. In his opinion, the use of plaintiffs' property as a professional office would have "very little negative impact if any" on the Kenilworth Lane neighborhood.

Presumably, from this testimony, we are to conclude that plaintiffs' property, if zoned commercially, would mix well with the commercial nature of the Brentwood Boulevard neighborhood and cause no harm to the Kenilworth Lane neighborhood. This would show less of a public benefit in keeping the present residential zoning than in changing to commercial zoning. This may be true if the property is a part of the Brentwood Boulevard commercial neighborhood more than it is a part of the Kenilworth Lane neighborhood. We are not convinced it is.

Arguably, the property sits on the boundary between the two "neighborhoods". However, the house sits 40 to 50 feet away from Brentwood Boulevard and faces Kenilworth Lane. The house is separated from its nearest neighbor only by two eight-foot-wide driveways. Prior to its purchase by plaintiffs, it was used as a residence for some forty years and could continue to be so used. Functionally, the property is a part of the Kenilworth neighborhood. And, therefore there is a legitimate public interest in zoning plaintiffs' property in conformity with that neighborhood, so as to preserve the value of the neighborhood as a whole.

Plaintiffs have not shown they suffer a detriment from the present zoning which is substantially greater than that which we accept as a natural consequence of zoning. Nor is their evidence conclusive that the public benefit from retaining the present zoning would be too little to justify their detriment.

More important, perhaps, the City's evidence leaves no doubt the question of reasonableness is a debatable one, and, thus, we must resolve it in favor of the City. *Elam, supra,* 784 S.W.2d at 335.

The City presented credible evidence that plaintiffs' detriment is small. The City's evidence showed the fair market value of plaintiffs' property used as a residence to

be $55,000. Donald Roach, an appraiser who testified for the City, said it was economically more feasible to use the property as a residence than to attempt to use the existing building as a professional office. Hortense Stuerman, whose home is directly across Kenilworth from plaintiffs' property, and even closer to Brentwood Boulevard, testified that the close proximity does not "bother" her, and that she wants to stay in the house for the rest of her life.

The City also presented evidence tending to show a significant public interest in maintaining residential zoning on plaintiffs' property. Several of the City's witnesses testified that Kenilworth Lane is a stable, well-maintained neighborhood. Burford Jeakins Page, III, a city planner consulted by the City's Zoning Commission about plaintiffs' property, recommended that the property remain residential. Four factors influenced his recommendation: the cohesive, well-maintained nature of the neighborhood, the City's wish to avoid its piecemeal rezoning, the fact the property lies within a floodplain, and an earlier "Corridor Study" of Brentwood Boulevard that, upon consideration of a variety of conditions, recommended the subject property remain residential. This evidence shows not only a significant public interest in the neighborhood as residential, but also that this interest was actually a factor in the City's decision.

After reviewing the City's evidence, we must conclude that the question of the reasonableness of the present zoning is a fairly debatable one. The evidence shows neither a significant detriment to plaintiffs, nor a clear dearth of public benefit resulting from the present zoning. Thus, we will not substitute our judgment for that of the City.

Plaintiffs also cite other facts to show the City's refusal to rezone their property was unreasonable: the City's rezoning from residential to commercial of the Landmark Bank property at the north end of Kenilworth Lane, and the "Enders property," two lots located a few blocks south of Kenilworth Lane on Brentwood. These facts are of only marginal relevance here and do not affect the outcome.

The City rezoned the Landmark Bank property, located at the north end of Kenilworth Lane, from "B" residential to "RSC" commercial, for construction of a six story, 700 space parking garage. The City's expert, Mr. Page, testified that the house immediately adjacent to the parking garage may be adversely affected. This house is owned and used by the bank building's owner. Plaintiffs' expert Mr. Baggs testified that the Landmark development would have a detrimental effect on Kenilworth Lane, but he also testified that the properties on Kenilworth Lane other than the two properties abutting Brentwood Boulevard —plaintiffs' and Stuerman's property— should remain residential. Moreover, plaintiffs' property is separated from the parking garage by 32 houses on the west side of Kenilworth and by a curve in Kenilworth Lane. The property is 700–800 feet from the parking garage. From these physical facts and the witnesses' testimony, it is reasonable to infer that the distance of the plaintiffs' property from the garage precludes any substantial adverse impact on its use as a residence, even if the garage had some detrimental effect on the properties close to the garage.

Plaintiffs imply it was "unfair" for the City to refuse to rezone the subject property while approving the rezoning of the Landmark Bank property. This alleged "unfairness" only has meaning if the City's conduct was arbitrary and unreasonable. It was not.

There are sufficient differences between Landmark's property and plaintiffs' property to justify treating them differently. Landmark Bank and its garage are next to Highway 40 and abut the eastbound exit ramp from the highway onto Brentwood Boulevard. The exit and entrance ramps onto Interstate 170 are approximately 400 feet from the Bank. A curve in Brentwood Boulevard separates the Bank's property on Brentwood from the part of plaintiffs'

property which abuts Brentwood. The highway exchange and tall office buildings create a much greater commercial atmosphere in the area north of this bend, where the Bank is located, than there is south of the bend, where plaintiffs' property is located.

Furthermore, the site of the Bank itself was zoned for commercial use and used for a bank prior to the plaintiffs' application. The site of the parking garage was also owned by the Bank and, although zoned residential, was used as a parking lot by a previous bank.

Similarly, the so called "Enders property" is distinguishable from plaintiffs' property. The "Enders property" is located two blocks south of plaintiffs' property on the east side of Brentwood, at the intersection of Garden Court, and was rezoned from residential to RSC commercial in 1986. However, this property abuts "PD" planned development zoning on its south side and west side and is directly across Garden Court from a service station.

These differences are substantial enough to show the City did not act arbitrarily in rezoning the Bank's property and the Enders property, but not plaintiffs' property.

■ At trial both parties presented substantial evidence concerning whether the existing improvements on the subject property met the setback and flood plain requirements of commercial use under "RSC" zoning district. That evidence is irrelevant to the issue in this case: the constitutionality of the continued application of "B" residential zoning to plaintiffs' property. *Renick v. City of Maryland Heights*, 767 S.W.2d 339, 343 (Mo.App. 1989). Any unconstitutionality will arise from the unreasonableness of the continued application of this zoning classification,

not from the applicability or inapplicability of other zoning restrictions. On review, we are limited to determining the constitutionality of the present zoning, not what other zoning should be applied. *Id.* at 344.

Plaintiffs also contend that the existing brick residence on their property should not be a consideration in our review of the reasonableness of the current residential zoning. Plaintiffs cite four cases in which the improvements on the land were not considered by the court: *Miller v. Kansas City*, 358 S.W.2d 100 (Mo.App.1962), *Strandberg v. Kansas City*, 415 S.W.2d 737 (Mo.1967), *Ewing v. City of Springfield*, 449 S.W.2d 681 (Mo.App.1970), *Treme v. St. Louis County*, 609 S.W.2d 706 (Mo.App.1980). This argument is not persuasive.

In each of these cases, the court did not find the existing improvements to be irrelevant as a matter of law. In context, the existing improvements simply were not significant facts. In *Treme*, for example, the court indicated that a property's state of development would be relevant to the court's review:

> It must be noted that the land had lain undeveloped for ten years under its prior zoning. A reexamination of its zoning would appear to have been warranted in view of the development of the region proximate and the lack of development of the tract itself. *Id.* at 715.

To state the obvious, whether the reasonableness of a particular zoning is fairly debatable is fact specific and fact sensitive. On the facts here, we cannot find the residential zoning is not fairly debatable.

Judgment affirmed.

SMITH and GRIMM, JJ., concur.

APPENDIX

LAND USE LEGEND

▨ – DETACHED RESIDENCE

▨ – ATTACHED RESIDENCE

▨ – COMMERCIAL

ZONING DISTRICT LEGEND

⬚ᴮ – SINGLE FAMILY RESIDENCE

ᴬᴿ – TWO FAMILY DWELLING

ᴹ·ᴿ – MULTIPLE DWELLING

ᴿˢᶜ – LOCAL COMMERCIAL

ᴾ·ᴰ – PLANNED DEVELOPMENT DISTRICT

